UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MATTHEW A. HOLDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) No. 3:10-CV-445 |
| | ) (VARLAN/SHIRLEY) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 8 and 9] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 12 and 13]. Plaintiff Matthew A. Holder seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

I.  **BACKGROUND**

On August 16, 2007, Donna Holder applied for Supplemental Security Income (SSI) on behalf of her son, Plaintiff Matthew Holder [Tr. 352-55]. On November 14, 2007, the Agency determined that Mr. Holder was disabled and that his disability began on July 10, 2007. [Tr. 356]. The Plaintiff's primary diagnosis was identified as schizophrenia, paranoid, and other

psychotic disorders, and his secondary diagnosis was identified as a learning disability. [Tr. 356]. The Plaintiff became eighteen years of age in March 2008, and the Agency re-evaluated his status. In May 2008, the Agency informed the Plaintiff that he no longer qualified for SSI. [Tr. 357, 358-61]. On June 3, 2008, the Plaintiff requested reconsideration [Tr. 47], and the Agency subsequently denied this request. [Tr. 48].

The Plaintiff requested a hearing before an ALJ, and on March 8, 2010, Mr. Holder and his mother, represented by counsel, appeared and testified before ALJ Robert Erwin. [Tr. 364-97]. On April 27, 2010, the ALJ found that the Plaintiff was not disabled. [Tr. 19]. The Appeals Council denied the Plaintiff's request for review [Tr. 3-6]; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant attained age 18 on March 2, 2008, and was eligible for supplemental security income benefits as a child for a month preceding the month in which he attained age 18. The claimant was notified that he was found no longer disabled as of May 1, 2008, based on a redetermination of disability under the rules for adults who file new applications.

2. Born on December 20, 1988,[1] the claimant had not attained age 22 as of July 10, 2007, the alleged onset date (20 CFR 404.102 and 404.350(a)(5)).

---

[1]This date of birth is an error. The evidence in the record confirms that the Plaintiff's date of birth is March 3, 1990. [See Tr. 372].

3. Since May 1, 2008, the claimant has had the following severe impairments: major depressive disorder with psychotic features; panic disorder without agoraphobia; and limited intellectual functioning (20 CFR 4040.1520(c) and 416.920(c)).

4. Since May 1, 2008, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that since May 1, 2008, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is able to do unskilled work. He is able to do simple tasks on a sustained basis. He is moderately limited in his ability to remember, carry out detailed instructions, to maintain attention and concentration for extended periods. He is also moderately limited in the ability to interact with the general public, and to respond to changes at work.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 3, 1990 and is a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has marginal literacy and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills in not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Since May 1, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant's disability ended on May 1, 2008, and the claimant has not become disabled again since that date (20 CFR 404.1587(e), 404.1520(g), 416.987(e) and 416.920(g)).

3

[Tr. 12-18 (footnote inserted)].

## III. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to

4

> last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## IV. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses."  Wilson,

6

378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## V. POSITIONS OF THE PARTIES

On appeal, Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence. The Plaintiff contends the ALJ erred in his determination that the Plaintiff did not fulfill the criteria of Listing 12.05, the listing describing mental retardation. [Doc. 9 at 6]. Specifically, the Plaintiff argues that the ALJ erred in his conclusion that the Plaintiff did not have a "mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, Listing 12.05(C).

The Commissioner argues that the ALJ properly stated the information supporing his finding that the Plaintiff had not presented evidence of deficits in adaptive functioning. [Doc. 13 at 11]. The Commissioner maintains that the ALJ's findings as to adaptive functioning are consistent with the information found in the May 2008 report from Dr. Bray. [Doc. 13 at 11].

## VI. ANALYSIS

Initially, the Court would note that the Plaintiff has identified and argued only one issue on appeal, the ALJ's determination under Listing 12.05. The Plaintiff maintains that he "has

7

asserted throughout [these proceedings] that he meets this listing." [Doc. 9 at 5]. The ALJ, however, did not consider Listing 12.05 in his step three (listed impairments) findings. The Commissioner explains that the ALJ considered only Listing 12.02 (organic mental disorders), Listing 12.04 (affective disorders), and Listing 12.06 (anxiety-related disorders), because none of the evidence generated after the Agency did its re-evaluation of Plaintiff's claim mentioned mental retardation. [Doc. 13 at 10]. Nonetheless, the Commissioner states that because the record contained IQ scores in the range required by Listing 12.05, the ALJ discussed Listing 12.05 in the section of his decision that considered the Plaintiff's mental residual functional capacity ("RFC"). [Doc. 13 at 10]. Taking these statements and the opinion together, the Court will evaluate the ALJ's analysis of 12.05, as it would any other allegation of error with regard to a listed impairment.

**A.     Applicable Law**

The Plaintiff contends that he did and does suffer from mental retardation as it is defined by the Listing of Impairments found in 20 C.F.R. 404, Subpart P, Appendix 1, Part A, Listing 12.05C. Listing 12.05C provides in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> > C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant

work-related limitation of function.

Normally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. § 404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., No. 09-6389 (6th Cir. Mar. 11, 2011) (citing §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original).

Thus, to be disabled under Listing 12.05C, the Plaintiff must establish that: (1) his valid verbal, performance, or full scale IQ score was between 60 and 70; (2) he had significantly subaverage general intellectual functioning with deficits in adaptive functioning, which manifested prior to age 22; and (3) he has a mental or physical impairment imposing an additional and significant work-related limitation.

**B.     The ALJ's Determination**

In his discussion of Listing 12.05, the ALJ stated the following:

> Although the claimant has obtained scores on IQ tests which fall in the range of mild mental retardation, the claimant has failed to provide evidence of deficits in adaptive functioning, as required by listing 12.05. The claimant is apparently able to take care of his personal needs independently. He reportedly plays games on the internet; plays a guitar and keyboard; enjoys doing artwork, and draws a variety of subjects, including flowers and landscapes; pays bills; cooks simple meals; shops; cashes checks; does housekeeping and yard work; plays video games; works out; plays basketball; and watches television and movies. He testified that he had a valid driver's license and that he drove in Michigan before he moved with his family to Tennessee in November 2009. He indicated that the reason he had not driven since moving was because he did not have his own vehicle. He testified that he was

9

> able to read street signs and the newspaper. He reportedly got along well with friends and teachers; had good relationships with his two siblings; and attended church. In November 2008, he told his therapist that he had some responsibility for caring for his three-year-old nephew, who lived in his mother's household, along with the claimant. At the hearing, the claimant testified that he was a member of a youth group at church and that he was participating in an Easter play . . . .

[Tr. 16].

In support of his analysis, the ALJ cited, *inter alia,* two evaluations completed by Hugh D. Bray, Ph.D. The first of these evaluations was completed on October 26, 2007, when the Plaintiff was seventeen years old. [Tr. 284-88]. In this report, Dr. Bray described the Plaintiff's daily activities by explaining:

> The child is performing age appropriate activities and hygiene. He can clean a house, he does not shop for himself, he does not do the laundry, he does not cook simple meals, he does not use public transportation because he has trouble with things, but does interact[] with others. He can attend church, participate in sports, play games, shovel snow, take out the trash, cut the grass, and drive. His general interests are guitar music and sports. He is assigned chores of cleaning his room, mow the grass, and take out the trash. He does these age appropriately. When he comes home from school he likes to ride his bike and work out.

[Tr. 285].

During the same visit, Dr. Bray administered the WAIS-III test and found that the Plaintiff had a total verbal score of 72, a total performance intelligence score of 67, and a full scale intelligence score of 67. [Tr. 287]. Dr. Bray noted that the "full-scale score of 67 places him in the retarded range of mental functioning at the 1st percentile compared to his age group of peers." [Tr. 287]. In discussing the Plaintiff's participation in the testing, Dr. Bray remarked, "I do believe these results reflect the claimant's capabilities." [Tr. 287]. Dr. Bray diagnosed the

10

Plaintiff with mild mental retardation.

Approximately six months later on May 7, 2008, Dr. Bray conducted a second evaluation of the Plaintiff. Dr. Bray did not make reference to his previous evaluation of the Plaintiff, and in this second evaluation, he described the Plaintiff's activities by stating:

> The claimant reports engaging in completing his own dressing, hygiene, bathing and grooming. He does housekeeping. He does not do laundry. He pays bills, cooks simple meals, shops and cashes checks. He does not provide childcare. He does not attend church. He drives. He does yard work. He watches TV. He takes walks and exercises. He reads. He visits and socializes. He runs errands. He plays video games and watches movies. He can make medical appointments and call 911 in an emergency.

[Tr. 254]. Dr. Bray deferred making any diagnoses regarding personality disorders and intellectual disabilities, including mental retardation, during this examination. [See Tr. 256 ("Axis II Deferred.")].

**C.    Testimony at the Hearing**

The testimony of the Plaintiff and his mother[2] was, in part, consistent with Dr. Bray's characterization of the Plaintiff's self-reporting. The Plaintiff testified that he: can read a newspaper slowly but has difficulty with "big" words; has never had a job; takes out the garbage and mows the yard; goes to church and had a part as a member of "the crowd" in the Easter play; and helps get his five-year-old nephew ready for school. [Tr. 372-88]. The Plaintiff's mother testified that the Plaintiff: could not read music or play songs on his guitar, despite lessons; was able to use the computer; and had never had any job. [Tr. 389-97].

---

[2] Both the Plaintiff and his mother were subjected to "the Rule" and sequestered during their testimony [see Tr. 369-70].

11

**D.     Application to the Instant Case**

Applying the three prongs of Listing 12.05C to the instant case, the Court finds as follows.

*1.     A Valid Verbal, Performance, or Full Scale IQ score Between 60 and 70*

The parties appear to agree that the Plaintiff has fulfilled the first requirement.  As noted above, Dr. Bray administered the WAIS-III test and found that the Plaintiff had a total verbal score of 72, a total performance intelligence score of 67, and a full scale intelligence score of 67.  [Tr. 287].  Based upon these scores, the Court finds that the Plaintiff has presented a valid verbal, performance, or full scale IQ score that was between 60 and 70, and has fulfilled the first requirement of Listing 12.05C.

*2.     Significantly Subaverage General Intellectual Functioning with Deficits in Adaptive Functioning, Which Manifested Prior to Age 22*

The parties' dispute appears to involve the second requirement – *i.e.* that the Plaintiff demonstrated significantly subaverage general intellectual functioning with deficits in adaptive functioning, which manifested prior to age 22.  Specifically, the parties' briefs focus upon the ALJ's finding that the Plaintiff "failed to provide evidence of deficits in adaptive functioning, as required by listing 12.05."  [Tr. 16].

After reviewing the record, the Court finds that the ALJ's determination that the Plaintiff did not demonstrate adaptive functioning was not supported by substantial evidence.  The majority of the facts on which the ALJ relied in making this determination are undermined by the evidence in the record or are, in the Court's view, not indicative of the capability to perform the life-skills that the Listings refer to as "adaptive functioning."

While Listing 12.05 does not define "adaptive functioning," Listing 12.00 provides an overview of how adaptive skills and abilities should be evaluated.  It explains, "Activities of daily

living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P., App.1, Listing 12.00(C). Further, the claimant's activities will be evaluated for "their independence, appropriateness, effectiveness, and sustainability," to determine whether the claimant is "capable of initiating and participating in activities independent of supervision or direction." Id.

The ALJ noted that the Plaintiff plays a guitar and keyboard, but the Plaintiff's mother testified that, despite lessons, the Plaintiff cannot read music or play a tune, [Tr. 395]. As the ALJ indicated the Plaintiff draws; this activity does not demonstrate an ability to function independently. The only indication that the Plaintiff pays bills is found in Dr. Bray's notes from his second visit. The ALJ did not ask about the Plaintiff's ability to pay bills at the hearing, and the weight of the evidence does not indicate an ability to do so. The ALJ noted that the Plaintiff cooks simple meals, shops, and cashes checks, but again, the only evidence of this is from Dr. Bray's notes. To the contrary, the Plaintiff's mother when filling out a disability form indicated that he did not shop and did not prepare meals, [Tr. 135-36], and again, the ALJ did not ask the Plaintiff's mother about his ability to perform such household tasks at the hearing. Instead he relied on Dr. Bray's report. The ALJ also noted the Plaintiff's ability to complete house work and mow his lawn, but this ability appears to be very limited. [Tr. 135]

The ALJ noted that the Plaintiff plays video games, works out, and watches television and movies. None of these activities indicate independence or an ability to cope. The ALJ also stated that the Plaintiff plays basketball, but the only evidence in the record that the Plaintiff plays

13

basketball is a note in an "Individualized Education Program Team Report," dated April 12, 2005, which states "Matthew *wants* to play basketball on a league." [Tr. 103 (emphasis added)]. There is no evidence that the Plaintiff played or plays basketball, and when the ALJ asked if the Plaintiff ever expressed interest in or tried sports, the Plaintiff's mother said he did not. [Tr. 394].

The ALJ noted that the Plaintiff testified that he was able to read street signs and the newspaper, which he stated he would be abnormally slow in doing. The ALJ also noted that the Plaintiff "reportedly got along well with friends and teachers," but the record indicates that the Plaintiff had almost no friends outside of school and was teased and harassed by his peers. [See Tr. 393].

In November 2008, he told his therapist that he had some responsibility for caring for his three-year-old nephew, who lived in his mother's household, along with the claimant. The ALJ did not explore what this responsibility entailed at the hearing — for example, whether it included actually supervising the child, providing him meals, etc. It appears to the Court that the Plaintiff had little actual responsibility for his nephew, because in describing the Plaintiff's daily activities his mother stated that he was not able to appropriately interact with his pre-school age nephew. [See Tr. 133 ("If [nephew] gets into [Plaintiff's] room or made [Plaintiff] mad sometimes I am afraid that [Plaintiff] might hurt [nephew].")

At the hearing, the claimant testified that he was a member of a youth group at church and that he was participating in an Easter play. The ALJ noted the Plaintiff's participation in his evaluation, but the ALJ did not note that the Plaintiff described his role in the play as "one of the crowd," [Tr. 360], a role which would almost certainly involve no memorization and no action beyond standing in place.

14

The Court has considered the evidence in the record regarding Plaintiff's adaptive functioning, and the Court cannot conclude that these activities are the type that demonstrate the independence of function referenced in the regulations. In other cases within this Circuit, persons who have been found not to have deficits in adaptive functioning have abilities that exceed the abilities the record indicates the Plaintiff possesses. See West v. Comm'r Social Sec., 240 Fed. App'x 692, 698 (6th Cir. 2007)(finding substantial evidence supported the ALJ's conclusion that the claimant did not experience deficiencies in adaptive functioning, where claimant held a long-term, full-time position with his city, "continued to drive a garbage truck on a part-time basis, to care for his daily needs, to pay bills, to shop for groceries, to interact with friends and families, and to engage in numerous other daily activities"); see also Carmack v. Barnhart, 147 Fed. App'x 557, 560-561 (6th Cir. 2005) (finding ALJ's determination that claimant did not have sufficient adaptive function deficiencies where she owned a tanning salon which required her to keep the books, manage the business, use the adding machine, and take appointments and was employed as a court reporter).

The Court finds that, based upon the foregoing and the record as a whole, the ALJ's determination that the Plaintiff "failed to provide evidence of deficits in adaptive functioning, as required by listing 12.05," was not supported by substantial evidence.

*3. A Mental or Physical Impairment Imposing an Additional and Significant Work-Related Limitation*

Finally, the parties' positions as to the third requirement – whether the Plaintiff has demonstrated a mental or physical impairment imposing an additional and significant work-related limitation – are somewhat unclear. In his part 3 analysis of the Plaintiff's severe impairments, the ALJ found that the Plaintiff had three severe mental impairments: major

depressive disorder, panic disorder, and limited intellectual functioning. The Court finds that these mental impairments impose an additional and significant work-related limitation of function, as required by Listing 12.05C. Accordingly, the Court finds that the final prong of Listing 12.05C has been fulfilled.

## VII. CONCLUSION

Based upon the foregoing, the Court finds that the ALJ's determination that the Plaintiff "failed to provide evidence of deficits in adaptive functioning, as required by listing 12.05," was not supported by substantial evidence. Moreover, the Court finds that the Plaintiff has demonstrated that he suffers from Mental Retardation as identified in Listing 12.05 of 20 C.F.R. Pt. 404, Subpt. P., App'x 1.

The Court, therefore, **RECOMMENDS**[3] that Plaintiff's Motion For Summary Judgment **[Doc. 8]** be **GRANTED** and that the Commissioner's Motion for Summary Judgment **[Doc. 12]** be **DENIED**. The Court **RECOMMENDS** that the Commissioner's decision to deny benefits be **REVERSED** and that this case be **REMANDED** to the Commissioner for an award of benefits.

                                      Respectfully submitted,

                                      s/ C. Clifford Shirley, Jr.
                                      United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).